FOREGIN attachment case $600; issued September 16, 1847. Domestic attachment case $169; issued September 21, 1847.
The first of these suits was a foreign attachment, issued September 16, 1847; the second a like writ issued September 18th; and the third a domestic attachment issued September 21, 1847.
H. G. Banning made affidavit that at the issuing of all the above attachments the defendant was domiciled and resided in this State; and on this had a rule to show cause why the first two attachments should not be set aside.
It was proved that Shute left the State in September, 1847; that he had resided in this State four years or more prior to that time; that he had a family; but had been divorced from his wife by a decree of this court. He was embarrassed in his circumstances and left suddenly. The affidavit of Banning stated that Shute had absconded; the affidavit of McCaulley Richardson, that Shute resided out of the State.
Patterson, for the domestic attachment creditor. — Shute is proved to have resided in the State two years and upwards; was recognized as a resident and citizen, by the divorce; had a family; was a freeholder; he was, therefore, a resident when these foreign attachments were issued. The contest is between foreign and domestic attachments. The law provides a different mode of distribution and proceeding in relation to residents and non-residents. (Dig. 46.) This act not only provides for the case of a non-resident, but for an absconding resident or citizen. The court proceeds on equitable principles and by equitable rules. (§ 9.) This proceeding under an attachment law, is in the nature of a proceeding in bankruptcy. (Serg. Att. 5, 63, 9; 1 Dall. Rep 153.) Absconding is a quasi act of bankruptcy. The construction will be such as favors a distribution among creditors. It has extended the law to citizens of other States on this liberal construction. (2 Harr.Rep. 308.) The question here is, whether the word "resident" shall be confined to persons actually within the State. There is no proof, however, *Page 27 
that Shute was not actually here up to the 21st September. His residence prior to that time is proved, and will be presumed to have continued until the change of residence is proved. A man does not lose his domicil in one place until he acquires it in another. (StoryConf. 39, 41.) Nor does he become a non-resident for the purpose of the attachment laws by absconding. (Serg. Att. 64-5; 1 Dall. Rep. 152;ib. 158.) The question of residence in reference to the attachment laws, is very different from what constitutes residence under the election laws. (9 vol. 279.)
Gray, for McCaulley, one of the foreign attachment creditors, objected that Banning could not come in and object to the validity of the attachments. The question of the regularity of these attachments is between these attachment creditors and the defendant, Shute; the proceeding by foreign attachment, as well as domestic attachment, is against the defendant to procure an appearance, and neither he nor any one else can object to the proceeding, unless he will enter special bail and dissolve the attachment; that is, appear to the suit. (Penn. LawJour., May, 1848, 306.)
But supposing the domestic attachment creditor entitled to object to our preceeding. A person leaving the State with the design of taking up his residence elsewhere, loses his residence immediately, and becomes subject to a foreign attachment. McCaulley swears in his affidavit that Shute was then a non-resident; will the court in this summary and indirect way, find that affidavit to be untrue? So far as the evidence goes, it shows that Shute had left the State, and was a non-resident.
Johnson, for Richardson. — Where a resident of the State leaves for the purpose, or with intent of changing his residence, it is a proper case for the foreign attachment. A person absconding may have a different intent; and may remain a resident so far as this attachment process is concerned. What is the test of a change of residence, for the purposes of attachment? The only proper rule is the intention; such as governs in relation to questions of residence under the election laws. If one leaves with intention to change his residence, he does so at once; if with intention of returning, he does not lose his residence, though absent for a length of time.
Wales, in reply. — The interval between these attachments is five days. Shute had resided in Wilmington two years previous; was a resident; had real property, and was married there. The question *Page 28 
then is, whether he was the subject of a foreign or a domestic attachment. A foreign attachment lies only against non-residents; residents whether here or absconding, are the subjects of domestic attachment. A man proved to have been a resident does not become a non-resident by merely leaving the State; he must be shown to have intended to become a resident elsewhere. There is no such proof here. Where Shute went, or for what purpose, is not proved. He went at one time; his family at another. (Story Conf. 457; 3 Yeates Rep. 55.)
The Court made the rule absolute; setting aside the first two attachments; and giving the proceeds to the domestic attachment.